JiBYRNES, Judge.
Appellant, United States Fidelity & Guaranty Company (USF & G) appeals the granting of a motion for summary judgment in favor of E.S. Upton Printing.
We affirm.
A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Upton leased office space from Moylan Gomila and others (Gomila), defendants in the underlying cause of action. USF & G was Upton’s commercial property and liability insurer. On June 16,1991, Upton’s premises received major water damage after a rain storm, apparently due to a faulty roof on the building. Upton made a claim for property damage with USF & G, which was settled for $47,757.00, minus a $5,000 deductible.
On July 22, 1991, USF & G presented William Bell, president of Upton, a check for the damages and requested that Mr. Bell sign a “Subrogation Receipt.” That receipt states:
|2In consideration of and to the extent of the above payment, the undersigned subro-gates, assigns and transfers to the above Company, any and all claims or causes of action which the undersigned may have against any person, firm, or corporation liable for the loss mentioned above, and authorizes the Company to sue, compromise, or settle in the undersigned’s name, or otherwise, all such claims, and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned.
Warranted no settlement has been made by the undersigned with any person, firm, *424 or Corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made or release given by the undersigned without the written consent of the Company.
Mr. Bell signed the receipt and added the words, “Please collect my $5,000.00 deductible.”
On June 9, 1992, USF & G filed suit against Gomila to collect Upton’s deductible and the claims to which USF & G had been subrogated. Gomila filed an Answer, Recon-ventional Demand and Third Party Demand. In its reconventional demand, Gomila alleged that Upton had contracted with Gomila to obtain property damage insurance for Gomila through Upton’s agent McFarland, Gay & Clay. According to Gomila, they were unaware that they were never added to any policy of insurance, and were, therefore, unaware that they were uninsured on the date of loss.
USF & G notified Upton that it could not represent it in regard to the reconventional demand because the policy provided that USF & G would not defend any claim that Upton was legally liable to pay by reason of assumption of liability in a contract or agreement. USF & G advised Upton to retain other counsel.
laOne year later, Upton sent USF & G a letter advising that it wished to waive its right of recovery and instructing USF & G to dismiss the lawsuit against Gomila. Authority for his demand was grounded in an endorsement attached to the policy. The endorsement basically set forth the provisions of LSA-R.S. 22:666, which allows an insured to waive the right of recovery against certain classes of individuals or entities. USF & G responded that it would not dismiss the lawsuit because Upton had already subrogated its right of recovery to USF & G and was thus precluded from now waiving that right.
In January of 1995, Upton filed its Motion for Summary Judgment. It argued that LSA-R.S. 22:666 did not contain any time limitation under which an insured must waive its subrogation rights. Therefore, even though Bell had signed the subrogation release on behalf of Upton in July of 1991, Upton was within its rights to later withdraw such authorization. The trial court agreed and granted summary judgment.
LSA-R.S. 22:666 states:
Under any policy of insurance which authorizes the insured to waive the right of recovery of the insured against any party prior to loss without additional premium, the insured shall also be entitled to waive in writing after loss without invalidating the policy the right of recovery against any of the following:
[[Image here]]
(5) Anyone having an interest as owner, lessor or lessee of the insured premises or the premises on which the loss occurred and the employees, partners and stockholders of such owner, lessor or lessee ...
LSA-R.S. 22:666 is intended to confer rights upon an insured in preference to his insurer in consequence of the superior bargaining power of insurers. Such|4a law must be liberally construed in favor of the insured and against the insurer. LSA-R.S. 22:666 contains no time limit.
Although the rights conferred upon the insured by LSA-R.S. 22:666 can be waived, strong public policy requires that such a waiver be clear and explicit and any doubt must be resolved in favor of the insured and against the insurer.
The “Subrogation Receipt” in this case is analogous to the “Receipt and Release” signed in Succession of Villarrubia, 95-0346 (La.App. 4 Cir. 9/28/95), 662 So.2d 85, writ granted, 95-2610 (La. 1/12/96), 666 So.2d 312 where this court in reviewing a motion for summary judgment held that the receipt signed by Todd Villarrubia for a particular legacy was not intended to constitute a waiver of his claims as a forced heir. In fact, because of the strong public policy favoring the insured when insurance documents are to be construed, this Court is predisposed to view Upton’s argument even more favorably than that of Todd Villarrubia in Villarrubia. As a matter of law the “Sub-rogation Receipt” in the instant case is similarly insufficient to constitute a waiver of *425 Upton’s rights under LSA-R.S. 22:666. There is nothing in that document to indicate to Upton that it was waiving any rights under the policy, much less any statutorily conferred rights. The term “waiver” is one that is well known to the insurance industry. It is conspicuous by its absence in this case. Subrogation would ordinarily take place as a matter of law in favor of USF & G. There is nothing in the “Subrogation Receipt” that would alert the insured that it is anything more than a standard form receipt, or that the insured might thereby be relinquishing rights under LSA-R.S. 22:666 that it did not have to release in order to obtain payment. Since the “Subrogation Receipt” contains no clear reference to LSA-R.S. 22:666 either by ^specific citation or unambiguous description of rights conferred thereunder, a reasonable reading of that document is that it provides for subrogation subject to Upton’s rights under LSA-R.S. 22:666. The “Subrogation Receipt” fails to meet the public policy requirement that any standard form receipt furnished by an insurance company with the intention of depriving the insured of its rights under LSA-R.S. 22:666 must be clear and unequivocal. As we find as a matter of law that the “Subrogation Receipt” is insufficient to constitute a waiver of Upton’s rights under LSA-R.S. 22:666, summary judgment in favor of Upton was proper.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

KLEES, J., dissents for the reasons assigned by MURRAY, J.